OPINION
This is an appeal from a judgment of the Court of Common Pleas of Marion County granting a motion for a directed verdict in favor of Defendant, Malcolm Goodman ("Appellee"). Finding no merit to Appellant's arguments advanced on appeal, we affirm the judgment of the trial court.
The following is a brief summary of the facts and circumstances surrounding this complex case:
In May 1991, Plaintiff, Mary White ("Appellant"), filed a complaint for divorce against John Gamble in the Marion County Court of Common Pleas. In July 1993, Appellant filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court, Northern District of Ohio, Western Division. Appellee was appointed to serve as trustee in the bankruptcy matter. Although it appears as though the parties were divorced prior to the bankruptcy, issues of property division remained unresolved in the domestic relations court.
Appellant's bankruptcy petition listed as assets two antique automobiles: a 1911 Model T Ford Touring Car and a 1915 Model T Touring Car. During a subsequent creditor's meeting, Appellant informed the trustee that she had neither possession nor title to these automobiles. Appellee then inquired of Appellant's husband, Mr. Gamble, about the condition and location of the vehicles. Mr. Gamble indicated that the 1915 Model T was "in pieces" and basically worthless.
Upon determining that Appellant had no property available for distribution to creditors, Appellee filed a "Report of Trustee in No Asset Case." By way of entry dated December 27, 1993, the federal court discharged Appellant in bankruptcy.
Although we are unaware of the underlying reasons, it is apparent that the domestic relations case had not been finalized at this point. In January 1996, the domestic relations judge signed an entry allowing Appellee to join the divorce action due to the fact that Appellant was most likely going to receive one or both of the automobiles as part of the final property settlement. In fact, the domestic relations court ultimately awarded Appellant the 1915 Ford.
Following the entry of this judgment in the divorce case, Appellee discovered that the automobile had been restored and was being displayed in a local antique museum, rather than sitting somewhere "in pieces", as Appellant's ex-husband had previously suggested. Moreover, Mr. Gamble's former attorney contacted Appellee to inform him of his duty to notify the bankruptcy court as to Appellant's recent acquisition. As a result, Appellee filed a motion on March 11, 1996, requesting the federal court to reopen the bankruptcy case in order to have the automobile included in the estate and sold at auction, with the proceeds being distributed to Appellant's former creditors.
On September 9, 1996, Appellee filed a "Trustee's Notice of Sale" indicating that he wanted to sell the vehicle for the sum of $7,500. Four days later, Appellee sent Appellant a letter advising her that the proposed buyer of the automobile was her ex-spouse, John Gamble. Appellant filed an immediate objection to the sale. On October 9, 1996, the bankruptcy court held a hearing on Appellee's petition to reopen the case. After considering the testimony presented, the federal court denied Appellee's motion, finding that, as trustee, he had abandoned the automobile in the original 1993 bankruptcy proceeding, and that the property could not now be considered part of the estate.
On August 19, 1997, Appellant filed a complaint against several defendants, including Appellee, alleging various tortious acts in connection with the attempt to reopen the bankruptcy case and sell the automobile to Appellant's former spouse. Appellant prayed for compensatory damages in the amount of $350,000; punitive damages in the amount of $150,000; attorney's fees and costs of the action. Appellee filed an answer to the complaint denying all claims asserted.
After a period of general discovery, Appellee then filed a motion for summary judgment on February 20, 1998. By entry dated June 4, 1998, the trial court granted Appellee's motion and, in accordance with Civ.R. 54(B), stated that there was no just reason for delay. Appellant appealed the grant of summary judgment in favor of the trustee to this Court. In White v. Gamble (Nov. 2, 1999), Marion App. No. 9-99-14, unreported, this Court determined that the trial court erred with respect to Appellant's claims for civil conspiracy, abuse of process, malicious abuse of process and fraud. More particularly, we found that Appellee failed to carry his burden to show that a genuine issue of fact did not exist as to these claims because his motion and supporting memoranda focused only on the contention that he was acting within his duties as a trustee when this situation arose, whereas Appellant alleged that the trustee acted outside of his official duty and thus, was not entitled to claim any type of civil immunity.
Upon remand, the case against Appellee proceeded to a jury trial, which commenced on July 5, 2000. At the close of Appellant's case-in-chief, counsel for Appellee made a motion for a directed verdict on all claims. The court eventually granted the motion, finding that no reasonable jury could render a verdict in favor of Appellant. The court journalized its decision to direct the verdict on July 6, 2000. It is from this judgment that Appellant has filed the instant appeal asserting a total of four assignments of error for our review and consideration.
 I. The Trial Court abused its discretion in granting Defendant-Appellee, Malcolm Goodman's, motion for a directed verdict and awarded judgment to the Defendant-Appellee.
Both the trial and appellate courts are subject to the same standard when reviewing a motion for directed verdict. Sheidler v. Norfolk Western Railway (1999), 132 Ohio App.3d 462, 725 N.E.2d 351. That standard of review is:
 [I]f all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party.
Id. quoting O'Day v. Webb (1972), 29 Ohio St.2d 215, 220, 280 N.E.2d 896,899-900. See also, Civ.R. 50(A)(4). Because we are required to make a legal conclusion, we consider these cases on a de novo basis. McConnellv. Hunt Sports Enterprises (1999), 132 Ohio App.3d 657, 725 N.E.2d 1193.
In White v. Gamble, supra, this Court found that Appellant's rather ambiguously drafted complaint set forth claims for civil conspiracy, abuse of process, malicious abuse of process and/or fraud. Our finding as to the legal significance of Appellant's allegations is the law of this case. The doctrine of the law of the case establishes that the determination of a reviewing court on a legal issue remains the law in that matter for all subsequent proceedings. State ex rel. Baker v. StatePersonnel Board of Review (1999), 85 Ohio St.3d 640, 710 N.E.2d 706. Thus, these are the claims that we will review for purposes of this appeal.
Each of the aforementioned allegations essentially revolves around the general accusation that Appellee intentionally attempted to defraud and deprive Appellant of the 1915 Ford by moving the federal court to reopen the three-year-old bankruptcy case and order the sale of the automobile, all for the purpose of illegally sharing in the proceeds with Appellant and/or her creditors, and her former attorney. After a review of the testimony from the trial in this case, we can point to no evidence tending to demonstrate the essential elements of Appellant's causes of action. There is no indication that Appellee conspired to deprive Appellant of the automobile once it was determined to be her property. Appellee testified that even though he filed a "no asset" notice in the bankruptcy case, he always intended to petition to reopen the matter in the event that Appellant was awarded the property in the divorce. Appellee also denied working in concert with Appellant's former husband or attorney in order to share in the proceeds of any sale, and there is no other evidence from which to draw such an inference.
Therefore, based upon the foregoing, we find no error in the trial court's decision to direct the verdict on all claims tried to the jury. Accordingly, Appellant's first assignment of error is overruled.
 II. The Trial Court abused its discretion in allowing part of the testimony of Defendant-Appellee's expert witness, Bruce French, which included that Defendant-Appellee, Malcolm Goodman, did not perform outside of his official capacity as a Trustee or outside his authority as an officer of the Federal Court.
Even if we were to assume that the trial court erred in admitting certain statements elicited from Appellee's expert witness, it would not constitute a basis for reversal. Civ.R. 50(A)(1) provides that a motion for directed verdict may only be made at three specific times during a trial: upon the opponent's opening statement; at the close of the opponent's evidence; or at the close of all the evidence. Here, the record is clear that Appellee made a timely motion at the close of Appellant's case. Appellee did not begin his case-in-chief prior to making the motion; the expert witness was called out of order for the sake of convenience. In any event, the trial court was required to determine whether Appellant had adduced any evidence on the essential elements of her claims. See Bittinger v. Klotzman (1996), 113 Ohio App.3d 847, 851,682 N.E.2d 668. In reviewing the evidence presented by Appellant, we have already determined that the trial court correctly granted the motion for directed verdict. Accordingly, the testimony from Appellee's expert witness has no bearing on this determination.
Appellant's second assignment of error is overruled.
 III. The trial court erred in its discretion in not allowing the transcript of Plaintiff-Appellant, Mary Ann White's bankruptcy hearing to be entered into evidence of the court.
In her third assignment of error, Appellant complains that the trial court should have allowed the entire transcript from the October 9, 1996 hearing on Appellee's petition to reopen the bankruptcy case to be admitted into evidence. Initially, we note the general rule that a trial court enjoys broad discretion in deciding evidentiary matters. See,e.g., State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Consequently, a reviewing court will not reverse such a determination in the absence of an abuse of discretion. An abuse of discretion implies that the trial court issued an unreasonable, arbitrary or unconscionable ruling. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
Appellant first appears to argue that the transcript should have been admitted so the jury could review statements made by the bankruptcy judge during the hearing. In rejecting this assertion, we are mindful of the well established rule that a court speaks only through its journal entries. State v. King (1994), 70 Ohio St.3d 158, 162, 637 N.E.2d 903,906-907; Schenley v. Kauth (1953), 160 Ohio St. 109, 113 N.E.2d 625, paragraph one of the syllabus. Any non-journalized statements made by the court would clearly constitute inadmissible hearsay. Thus, we are convinced that the trial court did not abuse its discretion in this respect.
Appellant next appears to suggest that the transcript should have been admitted so the jury could review Appellant's own testimony. We disagree. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." According to Evid.R. 802, hearsay is generally inadmissible unless otherwise permitted by constitutional provision, statute, or the Ohio Rules of Evidence. The rambling narrative statement made by Appellant during the bankruptcy hearing comes within the purview of the hearsay definition, especially in light of the fact that she obviously wanted her statements admitted to prove the truth of her claims concerning what other people had told her. In reviewing the Ohio Rules of Evidence, there is no exception to the hearsay rule that would be applicable to this situation, and allow Appellant to bolster her current testimony with prior hearsay statements. Therefore, the trial court did not abuse its discretion in refusing to admit Appellant's own statements contained in the transcript of the bankruptcy hearing.
Finally, Appellant argues that the trial court should have at least admitted the transcript for the purpose of allowing the jury to review Appellee's prior testimony. Even if we were to assume, without deciding, that Appellee's statements should have been admitted, it is clear after reading the bankruptcy transcript that Appellant was not prejudiced in any way by the court's refusal to do so. Indeed, the bankruptcy transcript is merely cumulative of Appellee's direct testimony at trial. Consequently, any error in the exclusion of this evidence is harmless.
Appellant's third assignment of error is overruled.
 IV. The trial court erred in not allowing the Plaintiff-Appellant's counsel to question the Defendant-Appellee and the Plaintiff-Appellant about the Defendant-Appellee receiving 1/3 of the sale proceeds of a vehicle.
In her final assignment of error, Appellant argues that the trial court erred in refusing to admit relevant evidence about whether Appellee attempted to sell the vehicle with the intention of dividing the profits with Appellant and/or her creditors, and her former attorney. The record indicates two instances wherein the subject arose. The first instance occurred during the Appellant's case-in-chief when her attorney called Appellee as if on cross-examination. Counsel for Appellant asked Appellee if he were part of an agreement stipulating that in the event of a sale of the antique automobile, the proceeds would be split in the aforementioned manner. Interestingly enough, although the trial court sustained a vague objection to the question, Appellee answered in thenegative prior to the court's ruling. Thus, we find any error in the trial court's decision to be harmless since Appellant cannot demonstrate prejudice at this juncture.
The second instance that Appellant complains of took place during her direct examination. Appellant responded to a question posed by her own attorney by stating that she "didn't know how the money was going to be distributed [upon sale of the vehicle] other than what I've been told a third, a third, and a third from my attorney, Mr. Harris." Upon objection, the court struck this response as hearsay. While Appellant essentially argues that the court erred in striking her answer, we are unpersuaded. Again, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Obviously, Appellant's statement about what her attorney told her falls squarely within this definition. Hearsay is not admissible unless otherwise provided by constitutional provision, statute or by the Ohio Rules of Evidence. See Evid.R. 802. There is no exception to the hearsay rule applicable to this situation; therefore, we find no error in the trial court's refusal to admit Appellant's statement.
Appellant's fourth assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
HADLEY, P.J., concur.
SHAW, J., concur in judgment only.